**<u>AFFIDAVIT</u>**

I, Casey T Carty, a Special Agent (SA) with the Federal Bureau of Investigation (FBI), Cleveland Division, being duly sworn, depose and state as follows:

1.  I have been employed as a Special Agent of the FBI since April 2004, and am currently assigned to the FBI's Cleveland Division. While employed by the FBI, I have conducted investigations of numerous federal criminal offenses including white collar crimes, crimes against children, violent crimes and narcotics offenses.  I have gained experience through training at the FBI Academy and everyday work related to these types of investigations.

2.  I am an "investigative or law enforcement officer" of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

3.  This affidavit is being submitted for the limited purpose of establishing probable cause that Joseph L Geiger, age 31, and Michael A. Ward, age 29, have violated Title 18, U.S.C. § 1951 [Hobbs Act robbery] and Title 18, U.S.C. § 924(c) [use of a firearm during and in relation to a crime of violence].  The statements contained in this affidavit are derived from information provided to me by members of the Elyria Police Department (EPD) as well as my own investigation of this matter.  This affidavit does not include every fact known to me regarding this investigation, but will seek to summarize relevant information.

## **Probable Cause**

4.  On May 5, 2019, at approximately 9:50 p.m., two masked suspects entered the

    Marathon gas station located at 503 Huron St, Elyria, OH.  One suspect (UNSUB 1)

    wore dark blue coveralls, a black ski mask, white shoes and grey gloves, and was

    armed with a black semi-automatic pistol.  Security camera footage of this incident

    showed that UNSUB 1's eyes and mouth were visible through his ski mask, and it

    was apparent he was a light-skinned black male. The other suspect (UNSUB 2), wore

    black pants, a black hooded sweatshirt, a black hat and mask, black gloves and black

    boots and was armed with a black revolver.  Although UNSUB 2's face was obscured

    by his mask, I observed security camera footage of this incident in which UNSUB 2's

    lower back was visible between his shirt and waistband, revealing that he was a white

    male.

5.  Upon entering the station, UNSUB 1 took control of the lone store employee, who

    was sweeping the floor in front of the counter at the time.  UNSUB 2 proceeded

    directly behind the counter to the store's backroom, in an apparent effort to determine

    if any additional employees were inside the store.  Finding no one else inside the

    store, UNSUB 2 returned to the front of the store.  UNSUB 1, with one hand on the

    employee's upper back and his pistol trained at her lower back, walked the employee

    around the counter toward the store's backroom.  During this initial encounter, one of

    the UNSUB's told the employee something to the effect of "if you do everything we

    say it will be OK". As she was led around the counter toward the backroom, the

    employee was ordered to open the store's safe.  The employee explained that she did

2

not have access to the safe. In response to this explanation from the employee, one of the UNSUBS said something to the effect of "I'm going to shoot you, you know how to get in that safe".

6. Within seconds of UNSUB 1 and 2 entering the station, as the events described in Paragraph 5 were occurring, a customer parked in front of the store as if to enter. Seeing this customer parking in front of the store, the UNSUBS ordered the employee to retrieve her keys and lock the front door. The employee did as ordered and retrieved her keys from the back room.  As she entered the back room, the employee was able to activate a silent hold-up alarm. She retrieved her keys and returned to the front of the store, where the UNSUBS were crouched down, out of sight of the approaching customer.  UNSUB 2, crouching behind an ATM beside the front door, pointed his revolver directly at the employee while she locked the front door.

7. After locking the door, the employee was ordered to open the cash register, UNSUB 1 threatened to shoot the employee if she did not open the safe.  The employee opened the cash register and a small safe beneath one of the cash registers.  The UNSUBS removed cash from the register and safe, stuffing it into garbage bags along with cartons of cigarettes from the store's shelves. As they rummaged through the safe, UNSUB 2 told the employee to get down onto the floor, he then tied her hands together with plastic zip ties.  UNSUB 1 and 2 then fled eastbound from the store on foot with cash from the safe and register, and cartons of cigarettes.

8. Numerous Elyria Police Department (EPD) patrol officers were dispatched to the area of the Marathon station in response to the silent alarm. One officer encountered a light-skinned black male identified as Joseph Geiger walking down the street

approximately .3 miles to the east of the Marathon station near a residence at 520 Lowell St.  This encounter occurred within approximately three minutes of the suspects fleeing from the store. Geiger was found to be wearing white shoes similar to the ones worn by UNSUB 1 and his build was the same as UNSUB 1's. Geiger claimed that he was in the area because he worked at a nearby manufacturer and had just completed his shift. After briefly questioning Geiger, EPD advised him he was free to go.  Geiger's claim of having just gotten off work was later determined to be false.

9. Promptly after the robbery, EPD officers canvassed the area around the Marathon station and located several items of evidence. Plastic zip ties similar to the ones used on the employee were located in the parking lot of the station. Behind the residences at 522 and 520 Lowell St (the location where EPD had initially encountered Geiger), officers recovered a black ski mask, another set of zip ties, a black .32 caliber Valor revolver loaded with (3) live rounds and bearing serial number 41833, a single $100 bill, a set of dark blue coveralls, a pair of grey gloves, and a black bag containing currency and coins. The revolver was located hidden among some old tires. On May 6, 2019, EPD officers returned to the Marathon station to search the area during daylight hours. Officers located a pair of white latex gloves along the apparent path of flight away from the station used by the UNSUBS.

10. Approximately one hour after the robbery of the Marathon station, Joseph Geiger returned to the area of the station and was again encountered by EPD. During this second encounter, Geiger wore black tennis shoes. Officers detected an odor of an alcoholic beverage emanating from Geiger, and placed him under arrest for disorderly

4

conduct while intoxicated. Geiger's cellular phone was seized as evidence by EPD at this time.

11. On May 6, 2019 EPD obtained search warrants from the Lorain County Court of Common Pleas authorizing a search of Geiger's cellular phone, as well as the collection of his DNA standard. Both search warrants were executed that day.

12. Witnesses interviewed by EPD Detectives advised that shortly before the robbery of the Marathon station, Geiger stated that he was going to "hit a lick" (street slang for committing a robbery) along with his friends Jonathan Donnell and Mike LNU (Last Name Unknown). Mike LNU was later identified as Michael A. Ward, a white male whose physical description matched that of UNSUB 2, and who was the brother of Jonathan Donnell's girlfriend.

13. A search of Geiger's phone revealed phone records which corroborated the information provided by the witnesses as described in Paragraph 12.

14. The items of evidence described above in Paragraph 9 were submitted to the Ohio Bureau of Criminal Investigation (BCI) for analysis.  Swabs of all of the items of evidence were collected by BCI.  BCI's analysis of these swabs concluded that Joseph Geiger's DNA profile was located on the interior of the black ski mask and on the interior of one of the grey gloves.  Geiger's DNA was identified by BCI as "included" in the DNA profile located on these items. Additionally, BCI's analysis identified Michael A Ward's DNA profile as being preliminarily associated with the DNA profile located on the swabs of the handled areas of the Valor revolver and on one of the latex gloves recovered from the crime scene.

15. On June 3, 2019, EPD Detective James Homoki and I interviewed Michael A. Ward at the Lorain County Jail. Ward was advised of his rights pursuant to *Miranda*, he stated he understood his rights, he waived his rights, and agreed to speak with us. In his interview, Ward confessed to his role in the armed robbery on of the Marathon gas station on May 5, 2019.  Ward stated wore a black ski mask during the robbery and was armed with a handgun. Ward tied the gas station employee's hands together with zip ties. He fled from the store and hid his handgun on or around some old tires in the same area where everything else from the robbery was dumped.

16.  On June 3, 2019, I met with the owner of the Marathon gas station at 503 Huron St, Elyria, OH and learned that the station does business in and affecting interstate commerce. Specifically, the station sells merchandise including beer and wine manufactured outside the state of Ohio. Additionally, this station is a Money Service Business, inspected by the Internal Revenue Service, and authorized to cash checks up to $10,000.

17. From my review of available online information, I learned that Valor firearms were manufactured by the Rohm Manufacturing company in Germany, who for a time also manufactured firearms in Miami, Florida. I found nothing to indicate that Valor firearms were ever manufactured in the state of Ohio. Accordingly, the .32 caliber Valor revolver described in Paragraph 9 travelled in interstate commerce in order for it to be recovered in Elyria, OH on May 5, 2019.

## Conclusion

18. Based on the preceding, there is probable cause to believe that Joseph L Geiger, age

    31, and Michael A. Ward, age 29, have violated Title 18, U.S.C. § 1951 [Hobbs Act

    robbery] and Title 18, U.S.C. § 924(c) [use of a firearm during and in relation to a

    crime of violence].


_____

Casey Carty, Special Agent
Federal Bureau of Investigation


This affidavit was sworn to by the affiant by telephone after a PDF was transmitted by email, per

Crim R. 41(d)(3).


Jonathan D. Greenberg                                    06-04-19
United States Magistrate Judge